# William Kedward et al., Appellants, *v.* Samuel J. Campbell.

*Judgment—Mental incapacity of maker of judgment note—Evidence—Auditors finding of facts.*

A judgment entered on a judgment note will be declared invalid where the evidence shows that the note was signed by the obligor in the extremity of his last illness, forty-eight hours before his death, when he was entirely prostrated mentally and physically and incapacitated from understanding the effect of his act; that the contents of the paper were not explained to him, and the subscribing witnesses are not able to say that, when he was asked whether the signature to the paper was his, he made an affirmative answer.

The findings of facts to the above effect, approved by the court, will not be disturbed by the Supreme Court where there is sufficient testimony to sustain the findings.

Argued Jan. 31, 1895. Appeal, No. 64, Jan. T., 1895, by plaintiffs, from order of C. P. No. 1, Phila. Co., June T., 1892, No. 540, dismissing exceptions to auditor's report. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to report of W. Rudolph Smith, Esq., auditor, on account of John Sidebotham, receiver of estate of Samuel J. Campbell, deceased.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the auditor's report, quoting them; and in confirming the report and ordering distribution in accordance therewith.

*John G. Johnson, James M. Beck* and *Wm. F. Harrity* with him, for appellant.

*Josiah. R. Adams, Samuel B. Huey* with him, for appellee.

PER CURIAM, Feb. 18, 1895:

The instrument whose validity is involved in this controversy is a single bill, commonly called a judgment note, for the payment of $12,085.03. It contains an authority to enter judgment for the whole amount, is dated June 13, 1892, but was signed on the 14th; and, being payable one day after date, was due as soon as it was signed. It contains also an agreement that the judgment may be entered without stay of execution, a waiver of inquisition, and a voluntary condemnation of the real estate of the obligor, an agreement that the prothonotary might enter the voluntary condemnation on the fi. fa., and that the real estate might be sold upon the fi. fa., and it contains also a waiver and release of "all relief from any and all appraisement, stay or exemption laws of any state now in force or hereafter to be passed."

Ordinarily the voluntary signature of a person to such a paper implies that he knew its contents. But this paper was signed by the obligor in the extremity of his last illness, when he was entirely prostrated physically and mentally and while he was constantly progressing to his dissolution which followed in less than forty-eight hours. His disease was meningitis. His attending physician testified as to his condition from the evening of the 12th, that, "During a portion of the time he was in a state of stupor, during a portion of the time in a state of coma, as I would call it, and during a portion of the time he was actually delirious, and at no time was his mental condition

what a physician would call clear." At a quarter past 10 A. M., on the 14th, his temperature was 102.2, pulse 120; at half past 4 P. M. temperature 103, pulse 160. The paper was signed between 11 and 12 A. M.

There was no testimony that the contents of the paper were explained to him at the time of, or before, or after it was signed. The subscribing witnesses were both unable to say that, when he was asked whether the signature to the paper was his, he made an affirmative answer. They said they could not understand what he said. The signature is illegible though he wrote an excellent hand.

There was a mass of testimony as to his condition of mind and body at the time of the execution of the paper and shortly before and after. From the whole of the testimony the auditor found as follows: "The facts clearly proved show that at the time the judgment note was signed there was such mental impairment of the defendant produced by bodily weakness, as well as by a disease of the brain itself, that in making his trembling attempt at his signature to the paper he was oblivious of the real nature of the act and totally unable to grasp its effect and consequence. That his mental capacity at this time was such as to thoroughly incapacitate him from understanding the effect of his act, an act authorizing an execution immediately to issue to sweep away his entire property. Under all the evidence offered, the auditor is of opinion that the note in question was not the clear, voluntary act of a man in the possession of his senses, and that the judgment confessed thereon cannot stand."

This finding has been confirmed by the learned court below. It is a finding upon a question of pure fact. After a patient and careful reading of the testimony, the auditor's report and the arguments of counsel, we do not feel at liberty to say that it was not justified by the evidence. It seems to us there was abundant testimony to sustain the finding.

The decree of the court below is affirmed at the cost of the appellants.